UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAVID S. AYERS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:03-cv-1780-RLY-TAB |
| | ) | |
| MARATHON ASHLAND PETROLEUM LLC and SPEEDWAY SUPERAMERICA LLC, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON MAP'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND ON SSA'S MOTION TO DISMISS**

**I.   Introduction**

Plaintiffs in this matter are each individuals or corporations that currently or formerly operated Marathon-branded gasoline dealerships. (Third Amended Complaint at 3-9). Defendant Marathon Ashland Petroleum LLC ("MAP") is a company that provides motor fuel to Plaintiffs pursuant to lease agreements entered into by each Plaintiff and MAP. *Id*. at 11. Defendant Speedway SuperAmerica LLC ("SSA") is a subsidiary of MAP that operates gasoline stations in competition with Plaintiffs. *Id*. at 10-11. Plaintiffs' suit is based upon allegations that Defendants have engaged in unfair competition against them.

Plaintiffs' Third Amended Complaint contains four claims: (I) breach of contract;

(II) violation of § 23-2-2.7-2(4) of the Indiana Deceptive Franchise Practices Act ("IDFPA"); (III) violation of § 23-2-2.7-2(5) of the IDFPA; and (IV) tortious interference with business relationships.[1]  All of the claims name MAP as a Defendant, but only Claims II and III name SSA as a Defendant.

This matter is now before the court on MAP's two Motions for Partial Summary Judgment[2] and on SSA's Motion to Dismiss.  MAP's First Motion for Partial Summary Judgment seeks summary judgment of Plaintiffs' Claim II because SSA is not an instrument of MAP and because Claim II is barred by the IDFPA's two-year statute of limitations.  *See* MAP's First Motion for Partial Summary Judgment.  MAP's Second Motion for Partial Summary Judgment seeks summary judgment of Plaintiffs' Claims II and III because Plaintiffs are not franchisees as defined by the IDFPA.  *See* MAP's Second Motion for Partial Summary Judgment.

For the following reasons, MAP's First Motion for Partial Summary Judgment is **granted** and MAP's Second Motion for Partial Summary Judgment is **denied**.  SSA's Motion to Dismiss is **denied**.  Finally, the court finds sua sponte that MAP's argument

---

[1] Claim IV only applies to Plaintiffs David S. Ayers, Dennis Ellis, and Kenneth Surber.

[2] These two motions were filed with captions identifying then as "Marathon Ashland Petroleum LLC's Motion for Summary Judgment on Plaintiffs' Second Claim for Relief Because Speedway is not MAP's Instrument and Because Plaintiffs' Claims are Time-Barred" and "Marathon Ashland Petroleum LLC's Motion for Summary Judgment on Plaintiffs' Second and Third Claims For Relief Because Plaintiffs are not MAP's Franchisees."  Because the motions did not seek summary judgment on all of Plaintiffs' claims, the court will cite to the motions as MAP's First Motion for Partial Summary Judgment and MAP's Second Motion for Partial Summary Judgment, respectively.

regarding the statute of limitations, found within MAP's First Motion for Partial Summary Judgment, also applies to SSA; thus, summary judgment of Claim II is **granted** in SSA's favor.

## II.     Summary Judgment Standard

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R .Civ. P. 56(c). The motion is granted if no rational fact finder could return a verdict in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, a court's ruling on a motion for summary judgment is akin to that of a directed verdict, as the essential question in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

When ruling on the motion, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences therefrom in that party's favor. *Id.* at 255. If the nonmoving party bears the burden of proof on an issue at trial, that party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Silk v. City of Chicago,* 194 F.3d 788, 798 (7th Cir. 1999). The moving party need not positively disprove the nonmovant's case; it may prevail by establishing the lack of evidentiary support for that case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). In accordance with this standard, the facts discussed

herein are construed in the light most favorable to Plaintiffs.

### III. Motion to Dismiss Standard

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court examines the sufficiency of the complaint, not the merits of the lawsuit. Fed. R. Civ. P. 12(b)(6); *United States v. Clark County, Ind.*, 113 F.Supp.2d 1286, 1290 (S.D. Ind. 2000). The court will dismiss a complaint for failure to state a claim only if it "'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Hamlin v. Vaudenberg*, 95 F.3d 580, 583 (7th Cir. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In making its determination, the court accepts the allegations in the complaint as true, and it draws all reasonable inferences in favor of Plaintiffs. *Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d 1245, 1248 (7th Cir. 1997); *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996). Additionally, the court will consider facts presented in exhibits attached to the complaint. *See*, *Zinermon v. Burch*, 494 U.S. 113. In accordance with this standard, the facts discussed herein are accepted as Plaintiffs allege them, and the court presumes that MAP and SSA are distinct corporate entities.

### IV. Discussion

Plaintiffs' Claims II and III are claims that MAP and SSA violated §§ 23-2-2.7-2(4) and (5) of the IDFPA Under those provisions, a franchisor may not compete against its franchisees nor may it discriminate amongst them:

> It is unlawful for any franchisor . . . to engage in any of the following

4

>   acts . . .
>   (4) Establishing a franchisor-owned outlet engaged in a substantially identical business to that of the franchisee within the exclusive territory granted the franchisee by the franchise agreement or, if no exclusive territory is designated, competing unfairly with the franchisee within a reasonable area . . .
>   (5) Discriminating unfairly among its franchisees or unreasonably failing or refusing to comply with any terms of a franchise agreement.

Ind. Code §§ 23-2-2.7-2(4), (5). According to Plaintiffs, Defendants have done both.

### A.  MAP's First Motion for Partial Summary Judgment

In its First Motion for Partial Summary Judgment, MAP argues that there was no violation of § 23-2-2.7-2(4) of the IDFPA because Plaintiffs filed suit after the expiration of the IDFPA's statute of limitations and because SSA, not MAP, competed against Plaintiffs.

The IDFPA specifically states that "[n]o action may be brought for a violation of this chapter more than two (2) years after the violation."  Ind. Code § 23-2-2.7-7.  MAP argues that the IDFPA's statute of limitations is occurrence-based, and that it begins to run whenever the statutory violation occurs, regardless of Plaintiffs' notice or knowledge of the violation. (MAP's Reply in Support of Its First Motion for Partial Summary Judgment at 2 (citing *Anderson v. Indianapolis, Indiana Aamco Dealers Advertising Pool*, 678 N.E.2d 832 (Ind. Ct. App. 1997)).  Plaintiffs counter that Defendants' actions were a continuous violation of the IDFPA and that the doctrine of continuing wrong therefore applies.

In Indiana, "[w]hen an entire course of conduct combines to produce an injury, the conduct may constitute a continuing wrong so as to delay the running of the statute of limitations." *Frady v. Hedgcock*, 497 N.E.2d 620, 622 (Ind. Ct. App. 1986). Continuing wrong "is not an equitable doctrine; it is simply a legal concept used to define when an act, omission or neglect took place." *Havens v. Ritchey*, 582 N.E.2d 792, 795 (Ind. 1991). When a series of acts constitute a continuing wrong, the statute of limitations is tolled until the wrongful act ceases, at which point a Plaintiff may file suit within the normal statutory period. *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692, 699 (Ind. 2000). The statue of limitations will continue to run, however, if the Plaintiff learns of facts that should lead to the discovery of a cause of action, even in the event that the relationship between the Plaintiff and tortfeasor continues afterward. *Parks v. Madison County*, 783 N.E.2d 711, 719 (Ind. Ct. App. 2003).

In the case at bar, even applying the doctrine of continuing wrong, each of Plaintiffs' claims under § 23-2-2.7-2(4) of the IDFPA is barred by the expiration of the statute of limitations. This lawsuit was filed on October 28, 2003. Accordingly, in order to succeed in its statute of limitations argument, MAP must demonstrate that each of the Plaintiffs knew of the possibility of unfair competition prior to October 28, 2001.[3]

Plaintiffs Kenneth Surber, Dennis Ellis, Robert and Pamela Dawson, and David

---

[3] The exception being Jon Graham who attended a meeting with counsel Jim Gunther prior to February 25, 2002, and therefore had notice and should have filed suit no later than February 25, 2004. Dep. of Jon Graham at 19. Because Graham only joined this lawsuit after the First Amended Complaint was filed on June 23, 2004, his claim of unfair competition is also barred by the two-year statute of limitations.

Ayers met at an American Legion Post in Broad Ripple, Indiana in approximately 1997 to discuss their belief that MAP and SSA were the same entity, and that they were unfairly competing against them. (Dep. of Kenneth Surber at 59; Dep. of Dennis Ellis at 42-43). Additionally, Plaintiffs Randall Childers, Norman McGath, Ralph Compton, Sohail Shakir, Jim Canode, Robert Spenner, Patrick Shallenberger, Frank Sturgis, and Richard Chitwood (along with Plaintiffs Ellis and David Ayers) attended another meeting in approximately 1999 to discuss hiring an attorney to represent them because of their belief that MAP and SSA were engaged in unfair competition against them. (Dep. of David Ayers at 68; Dep. of Sohail Shakir at 184). Plaintiffs Robert Ayers, Gary Prince, Bruce Brummett, Larry Waterman, and Gary Bayles each acknowledged that over two years before the filing of this lawsuit, they believed that MAP and SSA were the same entity and that there was unfair competition. (Dep. of Robert Ayers at 53-54, 76; Dep. of Gary Prince at 137-41, 146-47; Dep. of Bruce Brummett at 29-33, 68, 74; Dep. of Larry Waterman at 54-55, 186-87, 192-93; Dep. of Gary Bayles at 17-18).

Because Plaintiffs' beliefs that Defendants were engaged in unfair competition arose more than two years before filing suit, Plaintiffs' claim under § 23-2-2.7-2(4) is time-barred. Summary judgment of Claim II in MAP's favor is warranted based on the statute of limitations, and thus the court need not address whether MAP violated § 23-2-2.7-2(4) by competing with Plaintiffs.

**B.      Defendant's Second Motion for Summary Judgment**

In its Second Motion for Partial Summary Judgment, MAP argues that Claims II

and III, which are governed by Indiana Code § 23-2-2.7-2(4) and (5), respectively, should be dismissed because Plaintiffs have not been granted franchises as defined by Indiana Code § 23-2-2.5-1. Having granted summary judgment of Claim II, *supra*, the court now turns to the merits of Claim III.

Claim III hinges on whether or not a franchise exists between the parties. The Indiana Code defines a franchise as follows:

> "Franchise" means a contract by which:
> (1) a franchisee is granted the right to engage in the business of dispensing goods or services, under a marketing plan or system prescribed in substantial part by a franchisor;
> (2) the operation of the franchisee's business pursuant to such a plan is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and
> (3) the person granted the right to engage in this business is required to pay a franchise fee.

Ind. Code § 23-2-2.5-1.

### 1. Plaintiffs are Covered by the IDFPA Despite Not Paying Franchise Fees to MAP

Upon first glance it appears that Plaintiffs must demonstrate that they are charged a franchise fee in order for a franchise to exist. However, § 23-2-2.7-5 of the IDFPA carves out a specific exception to § 23-2-2.5-1's franchise fee requirement:

> For the purposes of this chapter, franchise means any franchise as defined in IC 23-2-2.5-1, clauses (a) (1) (2) and (3), and any agreement meeting the provisions of IC 23-2-2.5-1, clauses (a) (1) and (2) which relates to the business of selling automobiles and/or trucks and the business of selling gasoline and/or oil primarily for use in vehicles with or without the sale of accessory items.

Ind. Code § 23-2-2.7-5. The parties dispute how narrowly this exception was carved. Plaintiffs argue that both car dealers and gasoline sellers are covered by the exception while MAP argues that the exception only applies to companies who engage in the sale of both automobiles and gasoline/oil.

Federal courts must interpret state statutes as they believe they would be interpreted by the state's highest court. *U.S. Fire Ins. Co. v. Barker Car Rental*, 132 F.3d 1153, 1156 (7th Cir. 1997). In this instance, the statutory language is ambiguous. It is not clear from a reading of the statute whether the Indiana legislature intended for the exception to apply to car dealers and fuel distributors or if it was meant to apply only to those businesses that sell both cars and fuel. In light of this ambiguity and the lack of legislative history to reveal the legislature's intent, the court turns to Indiana's rules of statutory interpretation. *See Guy v. Indiana*, 823 N.E.2d 274, 276 (Ind. 2005) ("[t]he primary rule in statutory construction is to determine and give effect to the intent of the legislature").

While one interpretation of § 23-2-2.7-5 is that only companies that sell both automobiles and fuel are relieved of the franchise fee requirement for being covered by the IDFPA, the court concludes that interpreting § 23-2-2.7-5 in that manner would bring about an absurd result. The exception would be carved so narrowly as to apply to no one. *See Sales v. Indiana*, 723 N.E.2d 416, 420 (Ind. 2000) (rejecting "unintelligible" reading of statutory language). MAP has provided no evidence of, and the court is unaware of, any substantial number of companies that engage in the business of selling both

9

automobiles and gasoline. The legislature must, therefore, have meant for the exception to apply to both automobile dealers and sellers of gasoline and/or oil. Because it is undisputed that Plaintiffs are engaged in the sale of gasoline, they are covered by the exception and are not obligated to pay a franchise fee in order to be covered by the IDFPA.

### 2. The Issue of Whether Plaintiffs' Marketing Plans are Prescribed by MAP Presents Questions of Fact

Plaintiffs must demonstrate that they do business under a marketing plan or system prescribed in substantial part by MAP in order to be franchisees under the IDFPA. Ind. Code § 23-2-2.5-1. MAP argues that it does not have adequate control over Plaintiffs' marketing plans or systems for the parties' agreements to constitute franchises. Plaintiffs contend that several of MAP's actions raise significant questions of fact about MAP's control over their marketing plans or systems and that summary judgment is, therefore, not warranted.

The IDFPA does not provide a list of factors to consider in determining if there is significant control over the marketing plan or system to constitute a franchise, but the Indiana Court of Appeals has provided some guidance in this area. In *Master Abrasives Corp. v. Williams*, the Indiana Court of Appeals determined that a franchisee was operating under a marketing plan or system that was controlled by the franchisor in five specific areas: (1) it divided the state into marketing areas; (2) it authorized the establishment of sales quotas; (3) it gave the franchisor approval rights for any sales

personnel hired by the franchisee; (4) it established mandatory training for the franchisee's sales personnel; and (5) it required the franchisee to elicit information from customers regarding how they would use the products so that the franchisor could determine which products to sell.  469 N.E.2d 1196, 1200 (Ind. Ct. App. 1984).

MAP argues that because Plaintiffs do not satisfy each of these five factors, no franchises exist.  (Brief in Support of Motion for Summary Judgment on Plaintiffs' Second and Third Claims for Relief at 19-20).  The Indiana Court of Appeals, however, has noted that the *Master Abrasives* factors do not amount to a exhaustive test.  *Horner v. Tilton* , 650 N.E.2d 759, 762 (Ind. Ct. App. 1995).  Rather, "the principle to be applied is apparent.  The court examines the nature of the obligations that the agreement imposes upon the putative franchisee, particularly with respect to franchisor mandates regarding sales of goods or services." *Id*.

Regarding sales quotas, Plaintiffs argue that most of them pay rent pursuant to lease agreements and that the amount of rent charged is dependent upon how much gasoline they sell.  (Plaintiffs' Brief in Opposition to Second Motion for Summary Judgment at 16).  The lease agreements of Robert Spenner and David Ayers indicate that MAP has a program by which it monitors how much gasoline Plaintiffs are selling.  (*See* Plaintiffs' Brief in Opposition to Second Motion for Summary Judgment at Exhibits G, Z).  If the required monthly volume is not reached after averaging the volume sold each month during a nine-month period, then the Plaintiff must pay MAP a certain amount for every 1,000 gallons of gasoline that the average falls below the required monthly volume.

(*Id*.). This extra rent must be paid each month for a nine-month period. (*Id*.). A reasonable jury could view this policy of linking rent price to sales volume as a *de facto* sales quota.

Regarding mandatory training, Plaintiffs argue that all gasoline station owners were required to attend training in Indianapolis, Indiana if they had not previously had any service station training. (Plaintiffs' Brief in Opposition to Second Motion for Summary Judgment at 32). Plaintiff David Ayers indicated that he was required to attend such training along with four other employees. (*Id*. at Exhibit W). Plaintiffs also provided a MAP booklet entitled "Business Management Clinic" which indicates that MAP provides training in such areas as business planning, gasoline marketing, financial management, customer service, accounting procedures, and other business areas. (*Id*. at Exhibit X).

Additionally, MAP's use of the Mystery Shop program raises issues of fact about whether Plaintiffs are operating under a marketing plan or system prescribed by MAP. The Mystery Shop program is a quarterly evaluation of every Marathon-branded station "to assess the performance of that location on a host of traits or attributes." (Dep. of Thomas M. Kelley ("Kelley Dep.") at 97). If a station falls below the 80-percent passing level, they are assessed a $30 fee. (*Id*. at 97-98). The program calls for inspection of stations in areas such as interior and exterior appearance, employee appearance and

12

behavior, and use of the Marathon credit card. (*Id*. at Exhibits N, O).[4] Plaintiffs are required to honor Marathon-branded credit cards or they automatically fail the Mystery Shop program. (*Id*. at Exhibit N).

Finally, MAP has mandated store hours for its stations. The lease of Robert Spenner, for example, indicates that he is to keep his station open 24 hours a day, seven days a week. (Plaintiffs' Brief in Opposition to Second Motion for Summary Judgment at Exhibit G). He also risks forfeiture of his station if it remains closed for seven consecutive days. (*Id*.).

In light of *Master Abrasives*, a reasonable jury could view the sales-contingent rental agreements, the required training, the Mystery Shop program, and the mandatory store hours, taken together, as evidence that Plaintiffs operate under a marketing plan or system prescribed by MAP. Thus, summary judgment of Claim III is not warranted.

## C.   SSA's Motion to Dismiss

Having granted summary judgment in MAP's favor as to Claim II and denied summary judgment as to Claim III, the court now turns to SSA's Motion to Dismiss Counts II and III. Preliminarily, the court notes that SSA did not join in MPA's Motions for Partial Summary Judgment. As such, while Claim II has been dismissed as to MAP,

---

[4] Contrary to MAP's arguments, Exhibits N and O are admissible for the purposes of summary judgment. They can be read in conjunction with the affidavit of Thomas Kelley and the list of 2004 Brand Division Goals which suggest that an 80 percent score or higher is passing and that failure can result in a fine and eventually the de-branding of the station. Thus, the fact that the two documents do not outline the consequences of failure does not render them inadmissible.

Claim II is still pending against SSA.  The court *sua sponte* raises the question of timeliness as to Claim II against SSA and finds that the statute of limitations for Claim II ran concurrently against MAP and SSA because the allegations against both Defendants contend that they were acting in concert at all relevant times.  Furthermore, Plaintiffs have had an opportunity to thoroughly argue the issue of the statute of limitations in their response to MAP's First Motion for Partial Summary Judgment.  Therefore, summary judgment of Claim II is granted in SSA's favor, and SSA's Motion to Dismiss is moot as to Count II.  The court will limit its discussion to SSA's Motion to Dismiss to Claim III, which is the only remaining Claim to name SSA as a Defendant.

      Claim III alleges a violation of Indiana Code § 23-3-2.7-2(5), *supra*, which forbids franchisors from discriminating unfairly amongst franchisees or unreasonably refusing to comply with the terms of a franchise agreement.  Plaintiffs allege that SSA and MAP are jointly and severally liable for their actions because each Defendant "was the agent, servant, employee, coventurer and/or alter ego of each of the remaining Defendants."  Third Amended Complaint ¶ 29.  SSA moves for dismissal on the grounds that an alter-ego accusation does not state a cognizable claim.  Notably, there are no facts alleged in the Third Amended Complaint from which the court can construe SSA itself as a franchisor.  The only way in which SSA can be held liable, if at all, is as MAP's alter-ego.

      Courts are generally reluctant to ignore entities' corporate existence; however, the corporate veil will be pierced when doing so will prevent unfairness or fraud.  *National*

*Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 265 (7th Cir. 1996) (citing *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1232 (Ind. 1994)).  The burden of proof is on the Plaintiffs to convince the court that piercing the corporate veil is appropriate in this case.  *Id*.  The court's inquiry into whether Plaintiffs have met this burden is fact-sensitive and includes consideration of: "(1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form." *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994).

The court finds that this fact-sensitive inquiry goes beyond the pleading requirements that are the proper focus of a Motion to Dismiss.  Because the court cannot determine whether alter-ego liability exists at this stage of litigation, SSA's Motion to Dismiss Count III must be denied.

**IV.     Conclusion**

MAP's First Motion for Partial Summary Judgment is **granted**.  Plaintiffs' Claim II, brought under Indiana Code § 23-2-2.7-2(4), is time barred, and it is therefore **dismissed** as to both Defendants.

MAP's Second Motion for Partial Summary Judgment is **denied** because there are genuine issues of material fact with regard to Plaintiffs' Claim III, brought under Indiana

Code § 23-2-2.7-2(5).

SSA's Motion to Dismiss is **denied**. SSA's Motion to Dismiss is moot as to Count II, because summary judgment of that claim has been granted in SSA's favor; it is denied as to Count III because the issue of alter-ego liability raises questions of fact.

It is **so ordered**.

Dated: September 30, 2005.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Copy to:

Maureen E. Gaddy
GADDY & GADDY
1010 North High School Road
Indianapolis, IN 46224-6100

Electronic copies to:

Thomas P. Bleau
BLEAU FOX & FONG
tbleau@bleaufox.com

Joseph Gregory Eaton
BARNES & THORNBURG
joe.eaton@btlaw.com

Charles P. Gaddy
GADDY & GADDY
sportspro@netdirect.net

Barbara J. Meier
BARNES & THORNBURG
barbara.meier@btlaw.com

T. Joseph Wendt
BARNES & THORNBURG
jwendt@btlaw.com