UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAVID S. AYERS, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 1:03-cv-1780-RLY-TAB |
| vs. | ) | |
| | ) | |
| MARATHON ASHLAND PETROLEUM | ) | |
| LLC and SPEEDWAY SUPERAMERICA | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANT SPEEDWAY SUPERAMERICA LLC'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant Speedway Superamerica LLC ("SSA") moves the court to grant summary judgment in its favor on Plaintiffs' Third Amended Complaint because there are no genuine issues of material fact and it is entitled to judgment as a matter of law on all claims remaining against it. For the reasons set forth below, the court **GRANTS** its motion.

**I.   Introduction**

Plaintiffs, as current or former operators of Marathon-branded gasoline dealerships, filed this suit against Defendant Marathon Ashland Petroleum LLC ("MAP") and SSA on November 26, 2003. (Third Complaint at ¶¶ 1–29). Plaintiffs' Third Amended Complaint, upon which SSA now seeks summary judgment, contained four

1

claims: (I) breach of contract, (II) violation of Indiana Deceptive Franchise Practices Statute ("IDFPS") § 23-2-2.7-2(4), (III) violation of IDFPS § 23-2-2.7-2(5), and (IV) tortious interference with business relationships.  (*Id.* at ¶¶ 59–67, 68–75, 76–82, 83–88). Pursuant to the court's September 30, 2005 Entry, the court granted partial summary judgment in favor of MAP and SSA on Count II.  Count III is the only remaining claim that names SSA individually as Defendant.  In the court's September 30, 2005 Entry, the court noted with respect to Count III: "[T]here are no facts alleged in the Third Amended Complaint from which the court can construe SSA itself as a franchisor.  The only way in which SSA can be held liable, if at all, is as MAP's alter ego."  Plaintiffs assert that because SSA is the alter ego of MAP that Counts I and IV remain against SSA as well. (Plaintiffs' Brief in Opposition at 2).  Therefore, because the court finds that there is no genuine issue of material fact as to whether SSA is the alter ego of MAP, the court grants summary judgment in favor of SSA on Counts I, III, and IV.

**II.   Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Some alleged factual dispute that does not rise to a genuine issue of material fact will not alone

2

defeat a summary judgment motion. *Id.* at 247–48.

In deciding whether a genuine issue of material fact exists, the court views the evidence and draws all inferences in favor of the nonmoving party. *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996). However, when a summary judgment motion is made and supported by evidence as provided in Rule 56(c), the nonmoving party may not rest on mere allegations or denials in its pleadings but "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

### III.  Plaintiffs' Expert Witness[1]

Before the court sets forth the facts of this case, it must address the admissibility of the affidavit by Plaintiffs' expert, Stephen Schrader. His affidavit states in part:

> Based upon my experience in the marketing of retail gasoline, my knowledge of the retail gasoline industry and my review of the documents provided to me in this case, it is my opinion that:
>
> (A) MAP engages in substantially similar business as Plaintiffs, MAP's franchisees within Plaintiffs' marketing areas;
>
> (B) MAP exercises significant dominion and control in the management of SSA, SSA's marketing strategy and SSA's finances;
>
> (C) . . . MAP and SSA's joint Marketing Strategy Team . . . would signify a single business enterprise rather than two separate and distinct companies;

---

[1] SSA asserts numerous evidentiary objections to Plaintiffs' evidence submitted with their Memorandum in Opposition, in addition to its objections regarding the affidavit of Plaintiffs' expert. However, the court will only address the issue of Plaintiffs' expert because it finds that, assuming the rest of Plaintiffs' evidence is admissible, there is no genuine issue of material fact regarding SSA as MAP's alter ego.

>(D) . . . MAP and SSA's sharing of pricing data and databases . . . would signify a single business enterprise rather than two separate and distinct companies;
>
>(E) . . . MAP's commingling of Marathon-branded gasoline at Speedway-branded stations . . . would signify a single business enterprise rather than two separate and distinct companies;
>
>(F) . . . SSA's operation of MAP's service stations . . . would signify a single business enterprise rather than two separate and distinct companies;
>
>(G) . . . MAP and SSA's shared services . . . would signify a single business enterprise rather than two separate and distinct companies.

(Affidavit of Stephen H. Schrader "Schrader Aff." at ¶ 11, Plaintiffs' Ex. CC).

"Rule 56(e) of the Rules of Civil Procedure provides that affidavits supporting and opposing motions for summary judgment must . . . 'set forth facts' and by implication in the case of experts (who are not 'fact witnesses') a process of reasoning beginning from a firm foundation." *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989).

In this case, Plaintiffs' expert does not set forth any facts on which his reasoning is based nor does he set forth any reasoning for his conclusions. He does not state the facts from his retail gasoline industry experience or the facts from the material in this case that lead him to the conclusion that MAP and SSA are really a single entity. The quoted portions of his affidavit included above are too conclusory for this court to consider in deciding whether there is a genuine issue of material fact. Therefore, the court strikes the portions of the expert's affidavit quoted above.

**IV.   Statement of Facts**

**General**

1. SSA operates retail gas stations. (Third Complaint at ¶ 33). It is a wholly-owned subsidiary of MAP. (*Id*. at ¶ 28). MAP also operates Marathon-branded retail gas stations. (*Id*. at ¶ 33).

2. SSA was formed with the assets of SuperAmerica Group, an Ashland, Inc. company, and Emro Marketing Company, a Marathon company. (SSA Retail Integration Protocol at 1, Plaintiffs' Ex. D). The integration agreement, which governed the integration of Emro Marketing and SuperAmerica Group, stated that major integration decisions must be reviewed and approved by the MAP board of managers. (*Id*.)

3. SSA's corporate headquarters are located in Enon, Ohio. (Affidavit of Robert F. Gatliff "Gatliff Aff." at ¶ 5, SSA Ex. B). MAP's corporate headquarters are located in Findlay, Ohio. (*Id*.)

**Managers and Employees**

4. Both SSA and MAP are limited liability companies with different boards of managers. (Gatliff Aff. at ¶ 4). However, SSA's board of managers is made up of MAP representatives. (Exhibit A to First Amended LLC Agreement of SSA, Plaintiffs' Ex. KK). Senior management for SSA have worked for MAP in the past and vice versa. (MAP website, Plaintiffs' Ex. EE).

5. A representative from SSA sat on the MAP marketing strategy team, which

   worked on creating strategies for both SSA and MAP. (Deposition of Thomas M. Kelley "Kelley Dep." at 158–60, Plaintiffs' Ex. B). However, MAP and SSA employ different advertising agencies and have different marketing plans and objectives. (Affidavit of Gary E. Buroker "Buroker Aff." at ¶ 10, SSA Ex. A).

6. SSA makes its own personnel decisions, including setting employment terms. (*Id.* at ¶ 13).

7. SSA and MAP have their own benefit plans and use different rates and eligibility criteria in their retirement plans. (Affidavit of Harold E. Seidel "Seidel Aff." at ¶¶ 4–6, SSA Ex. D).

8. At times, MAP requests SSA employees to operate Marathon-branded stations. (Deposition of Ken Norus "Norus Dep." at 65–67, Plaintiffs' Ex. J). When SSA employees run the Marathon-branded stations, SSA keeps the revenues earned during that time period. (*Id.* at 67). SSA does not pay rent on those stations when it runs them. (*Id.* at 71–72). If those stations operate at a loss, the loss is allocated to the Marathon brand. (Deposition of Tommy Lefevers "Lefevers Depo" at 38, Plaintiffs' Ex. K).

**Banking and Spending**

9. SSA and MAP maintain separate bank accounts, and MAP funds do not enter SSA accounts. (Affidavit of Brad Mayer "Mayer Aff." at ¶ 4, SSA Ex. C).

10. SSA pays its vendors and service providers from its own business receipts and funds drawn on its own bank accounts. (*Id.*)

11. SSA pays its employees with checks drawn on its own bank accounts. (*Id.* at ¶ 6).

12. SSA independently determines how to spend its capital budget and uses funds from its own receipts in spending that budget. (*Id.* at ¶ 7).

13. SSA is not undercapitalized for the risks and expenses it incurs.[2] (*Id.* at ¶ 5).

14. Customers can use SSA credit cards and SSA SuperFleet cards at either SSA or Marathon-branded stations. (Day Report for Airport Marathon Station at 1, Plaintiffs' Ex. II); (Lefevers Dep. at 81).

**Corporate Records, Services, and Assets**

15. SSA maintains its own corporate books and financial records. (Mayer Aff. at ¶ 8).

16. On occasion, MAP gas tankers fill both SSA and Marathon-branded stations from the same load of gasoline. (Kelley Dep. at 43–45).

17. SSA has an agreement to purchase its fuel and distillate requirements from MAP. (Supply Agreement at 1, Plaintiffs' Ex. Y). However, SSA does not receive a more favorable price on these requirements as a subsidiary of MAP. (Affidavit of W. H. Beverly, Jr. "Beverly Aff." at ¶ 4, SSA Ex. E).

18. SSA determines the price at which it sells gasoline and other goods it carries in its stores to the public. (Buroker Aff. at ¶ 11–12).

19. Limited MAP personnel have access to SSA's pricing database, which collects street prices on gasoline and tracks competitive activity. (Kelley Dep. at 78,

---

[2]Although this a conclusory statement by the affiant, Brad Mayer, Plaintiffs do not dispute it. Therefore, the court accepts it as true without further support.

83–84). Other gasoline companies, like Shell or British Petroleum ("BP"), do not have access to SSA's pricing database. (Deposition of Greg Amburgey "Amburgey Dep." at 17, Plaintiffs' Ex. GG).

## V. Discussion

SSA asserts two main arguments in support of its summary judgment motion. The first is that the law does not allow a claimant to "reverse pierce" the corporate veil to hold a subsidiary liable for the acts of its parent. The second is that SSA is not the alter ego of MAP and therefore no piercing should be allowed. The court addresses each argument below.

### A. "Reverse Piercing" of the Corporate Veil

Generally, the doctrine of piercing the corporate veil is invoked to hold individuals liable for corporate actions because they failed to observe corporate formalities. *Comm'r, Dept. of Envtl. Mgmt. v. RLG, Inc.*, 755 N.E.2d 556, 563 (Ind. 2001). "The corporate veil is pierced only where it is clear that the corporation is merely a shell for conducting the defendant's own business and where the misuse of the corporate form constitutes a fraud or promotes injustice." *Id.* In addition, a court may pierce the corporate veil of one corporation to hold it liable for the debts of an alter ego or successor corporation. *See Oliver v. Pinnacle Homes, Inc.*, 769 N.E.2d 1188, 1191, 1192 (Ind. Ct. App. 2002).

In this case, Plaintiffs' theory for asserting claims against SSA is that it is the alter ego of MAP and, therefore, should be held liable for any wrongdoings procured by MAP. Plaintiffs' alter ego argument in this case is unusual because SSA is a wholly-owned

subsidiary of MAP. Rather than holding the parent liable for the wrongdoings of its subsidiary, Plaintiffs ask the court to find the subsidiary liable for the wrongdoings of its parent.

Even though Plaintiffs' theory of reversed corporate piercing is uncommon, it is not completely unprecedented in Indiana courts. In *Lambert*, the court pierced the corporate veil to reach a corporation's assets to satisfy the debts of an individual shareholder, rather than to hold an individual shareholder liable for the debts of a corporation. *Lambert v. Farmers Bank, Frankfort*, 519 N.E.2d 745, 747 (Ind. Ct. App. 1988). The court concluded that because defendant had failed to recognize corporate formalities and distinguish his personal and corporate assets and had attempted to shield himself from creditors by using the corporate form, it would pierce the corporate veil to reach the assets of defendant's corporation in satisfying a judgment against defendant individually. *Id*. at 748.

As this court has not found a case in Indiana where a court pierced the corporate veil to hold a subsidiary liable for the acts of its parent, it is unclear whether the holding in *Lambert* would be extended to the situation at hand. However, due to the lack of precedent and the presence of other grounds on which to grant SSA's motion for summary judgment, the court finds it unnecessary to decide how Indiana courts would rule on SSA's reverse piercing argument.

### B. Alter Ego Analysis

The general rule is that a corporation will not be held liable for the acts of its

subsidiaries. *Greater Hammond Cmty. Svcs., Inc. v. Mutka*, 735 N.E.2d 780, 784 (Ind. 2000). Parent and subsidiary corporations are presumed separate. *Id*. However, "[t]he legal fiction of a corporation may be disregarded 'where one corporation is so organized and controlled and its affairs so conducted that it is a mere instrumentality or adjunct of another corporation.'" *Oliver*, 769 N.E.2d at 1191 (quoting *Smith v. McLeod Distrib., Inc.*, 744 N.E.2d 459, 462 (Ind. Ct. App. 2000)). "While no one talismanic fact will justify with impunity piercing the corporate veil, a careful review of the entire relationship between various corporate entities, their directors and officers may reveal that such an equitable action is warranted." *Stacey-Rand, Inc. v. J.J. Holman, Inc.*, 527 N.E.2d 726, 728 (Ind. Ct. App. 1988).

Indiana law sets forth two groups of factors to analyze in deciding whether a corporate veil should be pierced. The first set of factors, laid out in *Aronson v. Price*, are most applicable where a court must decide if it will hold a shareholder liable for the acts of a corporation. 644 N.E.2d 864, 867 (Ind. 1994). The second set of factors, laid out in *Smith v. McLeod Distributing, Inc.*, are additional factors to consider where a court must decide whether to pierce one corporation's veil to hold it liable for the acts of another corporation. 744 N.E.2d at 463.

Under *Aronson*, to decide whether plaintiff has met its burden to prove that a corporate veil should be pierced, courts consider whether plaintiff has produced evidence of the following:

(1) undercapitalization; (2) absence of corporate records; (3) fraudulent

> representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form.

*Aronson*, 644 N.E.2d at 867.  Under *Smith*, a court also considers whether two corporations have (1) similar corporate names; (2) common principal officers, directors, and employees; (3) similar business purposes; and (4) the same offices, telephone number, and business cards.  *Smith*, 744 N.E.2d at 463.

In *Oliver v. Pinnacle Homes, Inc.*, the court granted summary judgment for defendant parent and held that it was not the alter ego of its subsidiary.  769 N.E.2d at 1195.  In that case, the parent and subsidiary shared a common president and used the same attorneys and accountants, but they did not have any other common officers.  *Id*. at 1194.  They did not have similar business purposes because the subsidiary built homes while the parent was a subcontractor to builders.  *Id*.  Further, plaintiffs' evidence that the two corporations shared a bank depository did not demonstrate a genuine issue of material fact that they commingled assets, especially because there was no evidence that they used the same bank account.  *Id*.  Finally, the court found that even though the subsidiary's business records were stored at the parent's facility, there was no genuine issue of material fact on whether they commingled records.  *Id*. at 1195.

In the present case, SSA submits undisputed evidence of the following.  It is not undercapitalized.  It maintains separate corporate books and financial records.  It has its

11

own bank account and does not receive funds from MAP.  It independently determines how to spend its capital budget.  It pays its expenses, including payroll, from its own business receipts.  SSA and MAP have different benefit and retirement plans.  They use different advertising agencies.  SSA's board of managers is different than that of MAP.  The headquarters of SSA and MAP are in different cities.  Based upon these facts, the court finds that MAP and SSA are separate entities.

Plaintiffs try to create a genuine issue of material fact about whether SSA and MAP commingle assets and affairs, whether MAP has complete control over SSA, and whether their business purposes are similar.  However, Plaintiffs' evidence, while undisputed by SSA, tends to demonstrate only that MAP has an interest in SSA as its subsidiary, not that SSA is MAP's alter ego.

To support its assertion that MAP and SSA commingle assets, Plaintiffs argue that on occasion, MAP tankers fill both SSA and Marathon-branded stations from the same gasoline load.  MAP's marketing strategy team helped create strategies for SSA.  Some MAP personnel have access to SSA's pricing database.  Marathon-branded stations accept SSA credit cards.  MAP worked with some banks to eliminate ATM surcharges in SSA stores.  At times, SSA employees operate Marathon-branded stations without having to pay rent to MAP while retaining the revenues.  However, these facts do not indicate the type of asset commingling that warrants piercing the corporate veil.  Rather, it evidences the fact that SSA is the subsidiary of MAP.

In addition, Plaintiffs assert that MAP has complete control over SSA.  However,

12

the only evidence they submit in support of that bold assertion is that MAP governed the formation of SSA, MAP representatives makes up the SSA board of managers, and that MAP included SSA's sales and margins in its quarter-end reports. Again, these arguments reflect nothing more than a parent-subsidiary relationship.

Finally, Plaintiffs argue that SSA and MAP have similar business purposes. Although SSA does not submit evidence regarding the business purposes of SSA and MAP, the court finds that Plaintiffs' evidence on this factor is irrelevant. Plaintiffs rely heavily on a Shared Services Agreement between Ashland, Marathon, and MAP. However, this agreement has no bearing on any shared services or similar business purposes between MAP and SSA, notwithstanding the fact that Plaintiffs refer to Ashland as "SSA" in explaining this agreement in their brief. That agreement governs the services that Ashland and Marathon each were to perform in the formation of MAP, a transaction that has no relevance to the relationship between MAP and SSA. To the extent that MAP and SSA may have shared other services as outlined by Plaintiffs, the court finds that, taken into conjunction with all of the evidence, that factor is insufficient to create a genuine issue of material fact regarding SSA as MAP's alter ego.

Considering all of the evidence presented, the court finds that there is no genuine issue of material fact regarding SSA as MAP's alter ego. SSA's undisputed evidence demonstrates that SSA maintains a separate corporate existence from MAP. Plaintiffs' evidence, on the other hand, only demonstrates that MAP has an interest in SSA as its subsidiary.

**VI.     Conclusion**

For the reasons set forth above, the court finds that there is no genuine issue of material fact as to whether SSA is MAP's alter ego.  Therefore, SSA's motion for summary judgment (Document #176) on the remaining Counts I, III, and IV is **GRANTED**.

**It is so ordered** this 4th day of January 2007.

                                                                      _____
                                                                      RICHARD L. YOUNG, JUDGE
                                                                      United States District Court
                                                                      Southern District of Indiana


Electronic Copies to:

Thomas P. Bleau
BLEAU FOX & FONG
tbleau@bleaufox.com

Joseph Gregory Eaton
BARNES & THORNBURG LLP
joe.eaton@btlaw.com

Charles P. Gaddy
GADDY & GADDY
gaddy@netdirect.net

Maureen E. Gaddy
GADDY & GADDY
1010 North High School Road
Indianapolis, IN 46224-6100

Barbara J. Meier
BARNES & THORNBURG LLP
barbara.meier@btlaw.com

Barak Vaughn
BLEAU FOX & FONG
bvaughn@bleaufox.com

T. Joseph Wendt
BARNES & THORNBURG LLP
jwendt@btlaw.com