UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAVID S. AYERS, et al., ) | | |
| Plaintiffs, ) | | |
| ) | | |
| vs. ) | | 1:03-cv-1780-RLY-TAB |
| ) | | |
| MARATHON ASHLAND PETROLEUM ) | | |
| LLC, ) | | |
| Defendant. ) | | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF TERRY COAPSTICK'S FIFTH AND SIXTH CLAIMS FOR RELIEF**

**I.     Introduction**

Plaintiffs, operators of Marathon-branded service stations, brought this suit against Defendant Marathon Ashland Petroleum, LLC ("Defendant") alleging, *inter alia*, breach of contract and violation of Section 23-2-2.7-2(5) of the Indiana Deceptive Franchise Practices Statute ("IDFPS"). Plaintiffs' Fourth Amended Complaint added two claims against Defendant relating solely to Defendant's termination of Jack Coapstick's ("Mr. Coapstick") franchise upon his death. In Count V, Plaintiff Terry Coapstick ("Plaintiff"), as the administrator of his father's estate, alleges that Defendant violated the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801, *et seq.*, by terminating Mr. Coapstick's franchise without proper grounds and without proper notice. Count VI alleges that Defendant violated Section 23-2-2.7-2(3) of the IDFPS by failing to provide Mr. Coapstick's heirs the opportunity to participate in the ownership of his franchise for a

reasonable time after his death.  Defendant now moves for summary judgment on Plaintiff's Fifth and Sixth Claims for relief pursuant to Federal Rule of Civil Procedure 56.  For the reasons set forth below, the court **GRANTS** Defendant's motion.

## II.    Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Some alleged factual dispute that does not rise to a genuine issue of material fact will not alone defeat a summary judgment motion.  *Id*. at 247–48.

In deciding whether a genuine issue of material fact exists, the court views the evidence and draws all inferences in favor of the nonmoving party.  *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).  However, when a summary judgment motion is made and supported by evidence as provided in Rule 56(c), the nonmoving party may not rest on mere allegations or denials in its pleadings but "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).

## III.   Statement of Facts

1.      Mr. Coapstick entered into a Service Station Lease ("Lease") with Defendant on

June 23, 2005.  (Fourth Amended Complaint ("Complaint") ¶ 67).

2. Mr. Coapstick operated his service station through J&M Marathon, Inc. (*Id.*).  Mr. Coapstick was the majority owner of J&M Marathon, owning 51% thereof; Bradley Anderson owned the remaining 49%.  (Deposition of Bradley Anderson ("Anderson Dep.") at 5, Defendant's Ex. 1).

3. The Lease gave Defendant the option of terminating the Lease upon Mr. Coapstick's death.  (Lease at 5, Defendant's Ex. 2).  The Lease stated in pertinent part:

> 15. NONRENEWAL AND TERMINATION.  This Lease is subject to and governed by the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, *et seq.*  In addition to all other rights and remedies available to [Defendant] [Defendant] may, at its option, terminate or nonrenew this Lease upon ninety (90) days' prior written notice or such shorter period of time as may be reasonable under the circumstances for the following:
>
>> C. The occurrence of an event which is relevant to the relationship between [Mr. Coapstick] and [Defendant] and as a result of which makes termination both reasonable and permissible, including without limitation the following:
>>
>>> (13) [Mr. Coapstick's] death.

(*Id.*).

4. Mr. Coapstick died on November 4, 2005.  (Deposition of Terry Coapstick ("T. Coapstick Dep.") at 16, Defendant's Ex. 3).

5. Mr. Coapstick did not designate a successor to his franchise upon his death.  (*Id.* at 26).

6. On November 9, 2005, Defendant sent Mr. Coapstick and J&M Marathon a letter terminating the Lease effective upon Mr. Coapstick's death on November 4, 2005. (November 9, 2005, Termination Letter ("Termination Letter") at 1, Defendant's Ex. 4).

7. The Termination Letter allowed Mr. Coapstick's personal representatives and J&M Marathon the opportunity to occupy and operate Mr. Coapstick's service station until November 30, 2005, for the purpose of winding-down the business. (*Id.* at 2). Defendant allowed this winding down period on the conditions that (1) J&M Marathon (or any other party occupying the service station) acknowledge in writing on or before November 15, 2005, that Defendant was not granting a new lease to any party by allowing the winding down of Mr. Coapstick's business, and (2) the continued occupancy of Mr. Coapstick's service station until November 30, 2005, was under the same terms and conditions as set forth in the Lease. (*Id.*).

8. Plaintiff and J&M Marathon successfully wound down Mr. Coapstick's business by November 30, 2005. (T. Coapstick Dep. at 19).

**IV. Discussion**

Defendant argues that terminating Mr. Coapstick's lease was proper, as the Lease provided that death was a ground for termination and the PMPA does not otherwise prohibit such provisions in franchise agreements. Plaintiff responds that the 1994 amendments to the PMPA combined with the relevant Indiana statute act to prohibit death as a ground for terminating a franchise agreement.

Congress enacted the PMPA, in part, "to protect 'franchisees from arbitrary or discriminatory termination or non-renewal.'" *Beachler v. Amoco Oil Co.*, 112 F.3d 902, 904 (7th Cir. 1997) (quoting *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1216 (7th Cir. 1982)). As such, the PMPA sets forth minimum standards for the termination or non-renewal of a petroleum franchise, enumerates certain grounds on which a franchisor may terminate or refuse to renew a franchise relationship, and specifies that franchisors must generally give 90-days notice before termination or non-renewal. *See* 15 U.S.C. §§ 2802–2804. The PMPA authorizes termination where an event occurs relevant to the franchise relationship that makes termination of the franchise reasonable. 15 U.S.C. § 2802(b)(2)(C). Further, the required 90-day notice period for termination or non-renewal is abdicated where the circumstances make 90-days notice unreasonable. 15 U.S.C. § 2804(b)(1). Interpreting these statutes, federal courts have ruled that the PMPA does not prohibit a contractual provision in a franchise agreement that terminates the agreement upon the franchisee's death. *See, e.g., Kostantas v. Exxon Co., U.S.A.*, 663 F.2d 605, 606 (5th Cir. 1981); *Iannuzzi v. Exxon Co., U.S.A.*, 572 F. Supp. 716, 721 (D. N.J. 1983); *Blankenship v. Knox Oil Co.*, 548 F. Supp. 789, 791 (E.D. Tenn. 1982); *Lanham v. Amoco Oil Co.*, 481 F. Supp. 405, 407 (D. Md. 1979).

To accomplish its purpose of creating uniform standards governing termination and non-renewal of leases, Section 2806(a) of the PMPA preempts state laws to the extent that they differ from the PMPA in the areas of termination and non-renewal. 15 U.S.C. §

2806(a)[1]; *Darling v. Mobil Oil Corp.*, 864 F.2d 981, 984–85 (2d Cir. 1989).  However, in 1994, Congress amended § 2806(b) to add the following paragraph regarding the transfer or assignment of a franchise:

> (2) Nothing in this subchapter shall prohibit any State from specifying the terms and conditions under which any franchise or franchise relationship may be transferred to the designated successor of a franchisee upon the death of the franchisee.

15 U.S.C. § 2806(b)(2) (amended by Petroleum Marketing Practices Act Amendments of 1994, Pub. L. No. 103-371, 108 Stat. 3484).

Indiana's IDFPS, which also governs the relationship between franchisors and franchisees, makes unlawful certain practices by franchisors, including the following:

> Denying the surviving spouse, heirs, or estate of a deceased franchisee the opportunity to participate in the ownership of the franchise under a valid franchise agreement for a reasonable time after the death of the franchisee, provided that the surviving spouse, heirs, or estate maintains all standards and obligations of the franchise.

IND. CODE § 23-2-2.7-2(3).  Plaintiff asserts that this section prohibits franchise

---

[1] Section 2806(a) reads in pertinent part:

(a) Termination or nonrenewal of franchise
(1) To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation . . . with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

15 U.S.C. § 2806(a)(1).

agreements from providing death as a proper ground for terminating the agreement; 15 U.S.C. § 2806(b)(2) protects Indiana Code § 23-2-2.7-2(3) from preemption; and that combined, these two statutes overrule the earlier federal court decisions upholding death as a proper ground for terminating a franchise agreement under the PMPA.

However, § 2806(b) governs transfers and assignments, and as such, the addition of § 2806(b)(2) necessarily applies only where there has been a transfer or an assignment of a franchise lease. Consequently, the wording of § 2806(b)(2) specifies that states may regulate transfers to "designated successors." In this case, there was no transfer or assignment of Mr. Coapstick's lease, nor did Mr. Coapstick name a successor to his franchise upon his death. As such, § 2806(b)(2) is not applicable to the present case.

Further, the language of Indiana Code § 23-2-2.7-2(3) does not clearly preclude death as a ground for terminating a franchise agreement. As quoted above, the applicable language of § 23-2-2.7-2-(3) states that the surviving spouse, heirs, or estate of the deceased franchisee must have the opportunity to participate in the ownership of the franchise *for a reasonable time* after the death of the franchisee. IND. CODE § 23-2-2.7-2(3) (emphasis added). Defendant asserts this language merely requires a franchisor to give the family of a deceased franchisee the opportunity to wind down the business after the franchisee's death. The plain language of § 23-2-2.7-2(3) does not clarify whether this section is intended only to allow the family/heirs/estate of a deceased franchisee the opportunity to finish the franchisee's business affairs, as Defendant argues, or whether it is intended to provide them the opportunity to succeed to the ownership of the franchise

agreement indefinitely, as Plaintiff argues.

A separate Indiana Code section, § 23-2-2.5-51, specifically addresses succession to ownership of a service station franchise agreement by a designated family member. IND. CODE § 23-2-2.5-51.[2] Where the meaning of a statute is in doubt, the court requires statutes relating to the same subject matter, or in *pari materia*, to be construed together to produce a harmonious statutory scheme. *Holmes v. ACandS, Inc.*, 709 N.E.2d 36, 39 (Ind. Ct. App. 1999). If § 23-2-2.7-2(3) was intended to require franchisors to give a deceased franchisee's family/heirs/estate the opportunity to succeed to the ownership of the franchise, rather than just allowing them time to wind down the business, then § 23-2-2.5-51 would be redundant. In order to produce a harmonious statutory scheme, therefore, § 23-2-2.7-2(3) must be read to require only that franchisors give the family/heirs/estate of deceased franchisees the opportunity to wind down the business, rather than requiring that they have the opportunity to succeed to the ownership of the franchise. In this case, Defendant allowed Plaintiff a period of time to wind down Mr. Coapstick's business, and Plaintiff was able to wind down the business during that time.

---

[2] Indiana Code § 23-2-2.5-51 reads in pertinent part:
(a) Any designated family member of a deceased service station franchisee may succeed to the ownership of the existing agreement if all the following conditions are met:
(1) The designated family member gives the service station franchisor written notice of the intention to succeed to the service station agreement within thirty (30) days of the service station franchisee's death.
(2) The designated family member agrees to be bound by all terms and conditions of the existing owner's franchise agreement.
(3) There is no good cause for the service station franchisor to refuse to honor the succession.

As such, Defendant complied with Indiana Code § 23-2-2.7-2(3).

Even if the court were to interpret Indiana Code § 23-2-2.7-2(3) as Plaintiff argues, § 2806(a)(1) of the PMPA would preempt the application of that statute. The PMPA does not expressly prohibit death as a ground for terminating a franchise agreement. Instead, as discussed above, federal courts have held that the PMPA does not prohibit a provision in a franchise agreement terminating the franchise upon the franchisee's death. The PMPA preempts any state statutes governing termination or non-renewal of petroleum franchise agreements that differ from the PMPA. Under Plaintiff's interpretation, Indiana Code § 23-2-2.7-2(3) disallows the termination of a franchise agreement upon death. This departs from the PMPA and is therefore preempted by the PMPA pursuant to § 2806(a)(1).

In conclusion, Defendant properly terminated Mr. Coapstick's franchise upon his death. Mr. Coapstick's franchise agreement provided that death was a ground for termination, and the PMPA does not prohibit such a provision. Contrary to Plaintiff's assertion, 15 U.S.C. § 2806(b)(2), added to the PMPA in 1994, does not apply in this case because Mr. Coapstick did not designate a successor to whom his franchise agreement would be transferred or assigned upon his death. Further, Indiana Code § 23-2-2.7-2(3) only requires that franchisors give the family/heirs/estate of a deceased franchisee the opportunity to wind down the franchisee's business, which Defendant allowed in this case. Alternatively, if Indiana Code § 23-2-2.7-2(3) did act to prohibit death as a proper ground for terminating a franchise agreement, that statute would be preempted by §

9

2806(a)(1) of the PMPA.

## V. Conclusion

For the reasons set forth above, Defendant's motion for summary judgment on Plaintiffs' Fifth and Sixth Claims for Relief (Docket # 225) is **GRANTED**.

**SO ORDERED** this 26th day of October 2007.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic copies to:

Thomas P. Bleau
BLEAU FOX & FONG
tbleau@bleaufox.com

Joseph Gregory Eaton
BARNES & THORNBURG LLP
joe.eaton@btlaw.com

Charles P. Gaddy
GADDY & GADDY
gaddy@netdirect.net

Maureen E. Gaddy
GADDY & GADDY
1010 North High School Road
Indianapolis, IN 46224-6100

Celim E. Huezo
BLEAU FOX
chuezo@bleaufox.com

Barbara J. Meier
BARNES & THORNBURG LLP
barbara.meier@btlaw.com

Barak  Vaughn
BLEAU FOX & FONG
bvaughn@bleaufox.com

T. Joseph Wendt
BARNES & THORNBURG LLP
jwendt@btlaw.com